**Michael Duane HOLSCLAW,**
**Petitioner-Appellant,**

v.

**Fred SMITH, Commissioner, Alabama Department of Corrections, and Charles Graddick, the Attorney General of the State of Alabama, Respondents-Appellees.**

No. 86–7574.

United States Court of Appeals,
Eleventh Circuit.

July 29, 1987.

N.P. Callahan, Jr., Birmingham, Ala., for petitioner-appellant.

Fred F. Bell, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees.

■■■■■■■■■■■■■■■■■

Before KRAVITCH and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

Michael D. Holsclaw appeals from an order denying his petition for a writ of habeas corpus in the district court.

## I. STATEMENT OF PROCEEDINGS

Holsclaw was convicted on December 8, 1980 in the circuit court of Madison County, Alabama of the offense of theft of an automobile, a felony. Upon urging of counsel he waived a jury trial. Proof was then submitted to the trial court of four prior felony convictions and he was then sentenced to life imprisonment without parole pursuant to the Alabama Recitivist Statute. His conviction was affirmed by the court of criminal appeals of Alabama in *Holsclaw v. State*, 406 So.2d 1019 (Ala.Cr. App.), *cert. denied*, 406 So.2d 1020 (Ala. 1981).

Thereafter, Holsclaw sought to attack his 1980 theft conviction collaterally by filing a petition for writ of error coram nobis. In that petition, the only issue he raised was that his trial attorney caused him to waive his right to a jury trial based upon what he alleged to be false information supplied to him by his appointed lawyer. The petition was denied by the trial court and the Alabama court of criminal appeals affirmed in *Holsclaw v. State*, 429 So.2d 1185 (Ala.Cr.App.1983). The court noted that appellant had failed to raise the issue timely, by raising this issue on the original appeal of his conviction and sentence.

Holsclaw then sought relief in United States district court by a petition for writ of habeas corpus. In this petition, Holsclaw alleged that his trial attorney had been ineffective at trial and on appeal. Upon the representation by counsel for the state that if the case was dismissed Holsclaw would have an opportunity to raise this issue by filing a writ of error coram nobis,[1] the district court dismissed the petition without prejudice. Thereafter, on January 26, 1984, appellant filed the second petition for a writ of error coram nobis in the circuit court of Madison County, Alabama, in which he alleged ineffective assistance of counsel at his trial and on direct appeal. The state appointed counsel to represent him and an evidentiary hearing was held by the state trial court. The court denied his petition, and this decision was affirmed by the court of criminal appeals in *Holsclaw v. State*, 481 So.2d 445 (Ala.Cr. App.1985).

On April 21, 1986, appellant filed his second petition for a writ of habeas corpus in the United States district court, alleging as a basis for his requested relief the lack of effective assistance of counsel at the trial and on appeal. The district court, basing its decision on the hearing at the error coram nobis proceedings and the factual determinations made at such proceedings, denied the petition. This appeal followed.

## II. STATEMENT OF THE FACTS

The conduct of the actual trial by appointed counsel is subject to some dispute between Holsclaw and his former appointed counsel. Holsclaw testified at the coram nobis hearing that his counsel told him that the only evidence the state had against him was so weak that he had had a conversation with the prosecuting attorney and the judge and that they had agreed that upon the conclusion of the state's case, the judge would dismiss the case if the defendant would waive a jury and let his case be

1. The memorandum of decision by the district court stated:

On the representation of the respondent that petitioner's allegation of ineffective assistance of counsel can and will be adjudicated on its merits in the circuit court of Madison County, the court accepts the magistrate's recommendation that this petition for habeas corpus be dismissed without prejudice.

tried by the judge. Counsel testified on direct examination by the state prosecuting attorney at the coram nobis hearing as follows:

Q: Then, to your knowledge, there was never any agreement between yourself and the State of Alabama and Judge Snodgrass that the charges against this defendant would be dismissed after an evidentiary hearing?

A: No. You and I had discussed that *you thought it was a weak case.*

Q: We discussed the facts of the case and—

A: Yes, but Judge Snodgrass was not involved in any of that.

Q: Do you recall any agreement between yourself and me about dismissing the charges against the defendant either before or after the evidence was presented to the judge?

A: No, I—I know I tried to get you to dismiss the charges, and as I recall, you were just adamant as could be about prosecuting the case ...

\* \* \*

Q: You did not make any guarantee to him?

A: No. You know, I just explained to him what the circumstantial evidence was and what the law was surrounding circumstantial evidence and that, in my opinion, the whole case from the state was circumstantial and that under the law, you know, in that kind of a case, unless they can exclude every reasonable hypothesis except guilt, then the judge would be bound by law to exclude the state's evidence.

Q: And that's what you explained to the defendant?

A: The best I could. It's very difficult to explain that to a jury....

\* \* \*

Q: I believe you and I discussed it even prior to that that *you had some idea that the case would probably be dismissed because of lack of evidence.*

A: Well, *it was my opinion, at the end of the state's case, the law would re-*

*quire that the state's evidence be excluded.*

(Emphasis added.)

The judge before whom the case was to be tried had previously presided over at least four other felony trials, either with or without a jury, that had resulted in convictions of Holsclaw, which fact was known to counsel when he urged Holsclaw to sign the waiver.

The state does not disagree with the statement by appellant that the following is the entire relevant testimony at the trial.

BY THE STATE:

Q. Miss Sterette, do you know the Defendant, Michael Holsclaw?

A. Yes.

Q. Tell the Court, if you will, when you first met Michael Holsclaw on that date?

A. Well, we met in the bar.

Q. While at the party at Betty White's house, did you see the Defendant, Michael Holsclaw?

A. Yes.

Q. Who did you leave with?

A. Mr. Smith and Mr. Holsclaw.

Q. Did you have some conversation with Mr. Holsclaw prior to leaving the party?

A. He asked for a ride home and we said we would give him a ride home.

Q. You say "we" you are talking about Mr. Smith?

A. Yes sir.

Q. Did the three of you leave the party?

A. Yes.

Q. How did you leave the party?

A. In my car.

Q. All right. Where did the three of you go after you got in your car and left the party?

A. Took Mr. Smith home.

Q. After you took Mr. Smith home what did you do?

A. Then I went to take Mr. Holsclaw home.

Q. And after you turned around, what happened?

A. Well, at the corner we stopped and we were talking.

Q. All right, Miss Sterette, tell the Court, if you will, what happened while you were stopped there in the automobile?

A. Well, I remember turning—I can't remember what we were talking about, I remember turning toward Mr. Holsclaw, and then the next thing I remembered was—well, the next thing I knew, I was in some gravel, some sort of rocks like and got up and fell back down and then got up.

Q. Did Michael Holsclaw hit you?

A. I can't say for sure. I don't remember him hitting me.

Q. Do you know where you were when you came to your senses?

A. No I don't know where I was.

Q. You didn't know at that time, but now do you know?

A. Yes.

Q. And where was it?

A. It was a place called Drake Mountain off of Pulaski Pike.

BY MR. KEMPANER:

Q. And you can't testify for sure that Mike hit you or drug (sic) you or kicked you out of the car or anything like that?

A. No, sir.

Q. And have you ever seen Mike in that '64 Plymouth other than that night you were driving him around?

A. No, sir.

Q. And had he forced you to drive him around that night?

A. No.

Q. And other than the time when Mike was in the car at your invitation, have you ever seen him driving the car?

A. No.

Q. You can't say of your own independent recollection that he drove away in your car that night can you?

A. No.

Q. And I don't want to be repetitive, I don't recall where it was that you said you thought you were when you all stopped.

A. It was off of Jordan Lane.

Q. Do you know where you ultimately came to?

A. Yes.

Q. Do you have an estimate as to how far that point is from the point on Jordan Lane where you don't remember anything?

A. I don't know exactly how far it is, but it's a long ways.

Q. Well, more or less than five miles?

A. More than five miles.

Q. And you don't know how you got there?

A. No.

BY THE COURT:

Q. I'm not certain that what you're telling me, are you saying that you passed out or that Mr. Holsclaw knocked you out or how are you saying you were rendered unconscious?

A. I don't know how I was rendered unconscious. The last thing I remember, I was talking; and the next thing I was laying on some gravel.

Q. You were talking with Holsclaw?

A. Yes, sir.

Q. Were you drunk?

A. Yes, sir.

Q. Was he drunk in your judgment?

A. I felt he was, yes.

Q. How much had you had to drink?

A. Quite a bit.

Q. What's quite a bit?

A. Well, I don't know how to describe it.

Q. A pint or quart or two drinks or five beers, or give me some judgment about how intoxicated you were?

A. It was over a pint, so I would say it was probably closer to a quart.

Q. Were you able to walk in your judgment?

A. Yes, I was able to walk.

Q. Is it your judgment that you passed out, or is it your judgment that you were knocked out?

A. I believe I was knocked out.

Q. What makes you believe that?

A. Because of the injuries I had when I came to.

Following this testimony, the state rested and counsel for defendant stated that he had nothing to offer nor did he make an argument on behalf of the defendant. He made no motion to exclude the evidence and he did not file a motion for new trial. Under Alabama law, these are the only means of challenging the sufficiency of the evidence to sustain a conviction.

Thereafter, when counsel appealed from the conviction and sentence under the Habitual Felonies Act, a sentence to life imprisonment without parole, the only error alleged by counsel was the failure of the state to notify Holsclaw before the trial of the state's intent to rely upon the four previous convictions and to seek application of the Habitual Felonies Act. Counsel was unable to raise the sufficiency of the evidence question because he had failed to raise this issue in the trial court.

Holsclaw's counsel testified at the coram nobis hearing that the waiver of the jury trial was a matter of strategy on his part, since Holsclaw had decided that he did not want to testify. Counsel testified that he was of the opinion that a jury would be much more likely to find the person guilty if he did not take the stand and testify on his own behalf. He insisted that this was a strategic move notwithstanding the fact that the trial judge had already presided and sentenced Holsclaw at four trials at which the defendant had been found guilty.

## III. DISCUSSION

The magistrate's report and recommendation, which was adopted by the district court, stated:

... In the instant case it is necessarily obvious that after hearing evidence in the coram nobis proceeding the state court necessarily resolved a credibility choice in favor of the court-appointed counsel ... and *necessarily found that court-appointed counsel's performance was not unreasonably deficient* and *court-appointed counsel's conduct did not cause any prejudice to the petitioner to the extent that a change in counsel's performance would likely have resulted in a different result.* Since these findings are an order of the Circuit Court of Madison County, Alabama, *they are entitled to a presumption of correctness.*

■ To the extent that the trial court's adoption of the magistrate's report was based upon the decision of the coram nobis court, it was erroneous except as to those historical facts, if any, which were necessarily decided by the state court's decision. That decision made no specific findings of fact at all. The decision of the coram nobis court was as follows:

The above styled cause came on for consideration by the Court upon the petition for writ of error coram nobis filed by Defendant. Upon consideration of the pleadings, the evidence adduced ore tenus on November 8, 1984, the arguments and contentions of counsel (both for the state and for the defendant) and upon a review of exhibits introduced at trial, the Court is of the opinion that such motion is due to be denied.

On appeal, the court of criminal appeals affirmed the denial of coram nobis on two grounds. First, the court said that there had been nothing raised in the second proceeding that could not have been raised in the first and therefore it should be denied as a successive petition. The court did not permit Holsclaw's new counsel to explain that the state attorney general's office had assured the federal habeas judge that this "petitioner's allegation of ineffective assistance of counsel *can and will be* adjudicated on its merits in the circuit court of Madison County."

Second, the court held that the circuit court, having heard the evidence and observed the witnesses was in a better position to determine the facts than it was.

The court then held that Holsclaw had failed to meet the burden of proof necessary to meet the test enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The magistrate's recommendation and the trial court's adoption are erroneous. As this Court has most recently said in

*Patricia Ann Carter v. Kathleen Holt, Warden:*

A criminal defendant is constitutionally entitled to the effective assistance of counsel. In determining a claim of ineffectiveness, the Court must determine whether in light of all the circumstances, the claimed omissions were outside the wide range of professionally competent assistance and whether there is a reasonable probability that, but for the unprofessional errors, the results in the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*Carter v. Holt,* 817 F.2d 699, 701 (11th Cir.1987).

The issue whether counsel's performance met the reasonable standard and the issue whether a failure to do so prejudiced the defendant are not issues of fact binding on the Federal Court to the extent stated by 28 U.S.C. § 2254(d).

Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d), and although district court findings are subject to the clearly erroneous standard of Federal Rule of Civil Procedure 52(a), *both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.*

*Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1983) (emphasis added.)

It being apparent that the trial court's decisions on the ineffectiveness issue and the prejudice issue were based upon its assumption that the state court's decisions with respect to these issues were binding, it is clear that at a minimum, this Court must remand the case to the district court for a hearing on the merits. However, counsel's action and omission at the trial of

Holsclaw, which stands undisputed on the record "in light of all the circumstances, ... were outside the wide range of professional competent assistance", *Carter v. Holt, supra.* Furthermore, it is evident that there is more than "a reasonable probability that, but for the unprofessional errors, the results in the proceeding would have been different." *Carter v. Holt, supra.* We conclude, therefore, that appellant is entitled to a decision of this Court establishing his claim that he is entitled to the writ on account of the ineffectiveness of counsel.

This conclusion is based upon counsel's failure to take any action during or subsequent to the trial to contest the sufficiency of the evidence for conviction.

■ We note, to begin with, that the circumstantial evidence was extremely weak. It is plain that such evidence did not exclude "every reasonable hypothesis except guilt" which counsel told Holsclaw would require the judge to exclude the evidence.[2]

■ Then, although the state contests the testimony given by Holsclaw that there had been an agreement between the prosecutor, the trial judge, and Holsclaw that if he waived a jury trial his case would be dismissed, the record fully supports Holsclaw's contention that his counsel told him that the state had such a weak case against him that its very weakness would *require* a dismissal when the evidence was submitted to the judge.

As an illustration, appellant's trial counsel, when being examined by the state at the coram nobis hearing, in stating what he had told Holsclaw about the case, said to the prosecuting attorney: "You [the prosecutor] and I had discussed that you thought it was a weak case." Further, he told Holsclaw that the prosecuting attorney

---

**2.** Federal courts, of course, do not require that circumstantial evidence exclude every reasonable hypothesis except guilt. *See United States v. Bell,* 678 F.2d 547 (5th Cir.1982) (en banc), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). The "exclusion of every reasonable hypothesis except guilt" standard, however, does appear to be the law in Alabama. *See, e.g.,*

*Williams v. State,* 468 So.2d 99 (Ala.1985); *Wilson v. State,* 243 Ala. 1, 8 So.2d 422 (1942); *Andrews v. State,* 473 So.2d 1211 (Ala.Cr.App. 1985). *Cf. White v. State,* 294 Ala. 265, 314 So.2d 857, *cert. denied,* 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975) (state not required to prove impossibility of accused's innocence.)

"had some idea that the case would probably be dismissed because of the lack of evidence." Finally, there was counsel's flat statement: "It was my opinion, at the end of the state's case, the law would require that the state's evidence be excluded."

In spite of all of this, Holsclaw's appointed lawyer made no motion to exclude the evidence and made no motion for a new trial, one of which would be required under the Alabama law in order to preserve the point of lack of evidence on appeal.

We, of course, do not attribute any bias to the circuit judge, arising from the fact that he had previously sentenced Holsclaw to four felony sentences, but it is too great a burden to place on a judge to expect him to forget all about the four previous felony sentences when called upon to decide on guilt or innocence of a defendant who had such a record of convictions. This is especially so when the evidence in the present trial is barely enough, if in fact it is enough, to warrant a conviction.

We do not reach the issue whether counsel's decision to waive the jury trial and to advise appellant not to testify on his own behalf were strategic decisions. For the purpose of our decision here, we assume that they were, or that the findings by the coram nobis court as to these facts were binding. We decide that the failure by counsel to raise the question of sufficiency of the evidence could not conceivably have been a strategic decision.

## IV. CONCLUSION

We conclude that the performance of Holsclaw's trial counsel was "outside the wide range of professional and competent assistance" and, based upon the perceived weakness in the state's case, there is a reasonable probability that "but for the unprofessional errors, the result in the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." In sum, we are of the view that, if counsel had challenged the sufficiency of the evidence in the trial court and on direct appeal, there is a "reasonable probability" that he would have prevailed.

The judgment is REVERSED and the case is REMANDED to the district court for the issuance of the writ, subject to the state's right to give Holsclaw another trial in the state court.